Robert LEARNARD, Plaintiff,

v.

The INHABITANTS OF THE TOWN OF VAN BUREN, et al., Defendants.

No. 01–CV–34–B–S.

United States District Court, D. Maine.

Jan. 29, 2002.

Daniel G. Lilley, Daniel G. Lilley Law Offices, P.A., Portland, ME, for Plaintiff.

Linda D. McGill, Esq., Robert M. Hayes, Esq., Matthew Tarasevich, Esq., Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, ME, for Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

SINGAL, District Judge.

A former municipal employee claims that town officials violated his procedural due process rights and committed state torts against him when they fired him

without first providing him a constitutionally adequate hearing. Three interrelated motions are presently before the Court: Plaintiff's Motion for Partial Summary Judgment (Docket # 26), Defendants' Motion for Summary Judgment (Docket # 28), and Defendants' Motion to Deem Defendants' Statement of Material Facts Admitted (Docket # 37). For the following reasons, the Court GRANTS IN PART Defendants' Motion to Deem Material Facts Admitted, DENIES Plaintiff's Motion for Partial Summary Judgment, GRANTS IN PART Defendants' Motion for Summary Judgment and DISMISSES the remaining claims WITHOUT PREJUDICE.

## I. SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is warranted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it has "potential to change the outcome of the suit under the governing law." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). An issue is "genuine" if "a reasonable jury could resolve it in favor of either party." *Basic Controlex Corp. v. Klockner Moeller Corp.*, 202 F.3d 450, 453 (1st Cir.2000). If the nonmoving party bears the ultimate burden of persuasion on a claim and fails to introduce evidence from which a reasonable jury could find in its favor on even one element of that claim, then the moving party is entitled to summary judgment. *McCarthy*, 56 F.3d at 315.

### B. Local Procedure

The scope of the evidence that the Court may consider in deciding whether genuine issues of material fact exist is carefully circumscribed by the Local Rules of this District. Local Rule 56 plainly sets out local summary judgment procedure. *See* Local Rule 56. The moving party is to file a separate statement of material facts that it claims are not in dispute. Local Rule 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *Id.* The nonmoving party is then required to submit a responsive "separate, short and concise" statement of facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts." Local Rule 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *Id.* The moving party may then respond with a reply statement of material facts in similar format. Local Rule 56(d). Failure to comply with the Rule results in potentially serious consequences: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Local Rule 56(e).

Both parties have moved for summary judgment. In addition, Defendants contend that Plaintiff has failed to follow the procedural requirements of Local Rule 56.

## II. DISCUSSION

### A. Motion to Deem Defendants' Facts Admitted

█ On October 18, 2001, Defendants moved for summary judgment on all counts and submitted a Statement of Material Facts in conjunction with their Motion. *See* Local Rule 56(b). On November 8, 2001, Plaintiff filed his responsive factual statement. On November 19, 2001, when Defendants submitted a reply factual

statement, they also filed a Motion pointing out the ways in which Plaintiff's responsive statement had violated the Local Rule and requesting that the Court deem their facts admitted because the Plaintiff had failed properly to controvert them.[1] *See* Local Rule 56(e). Before reaching the merits of Defendants' summary judgment arguments, the Court must address this objection to Plaintiff's pleadings.

Defendants' original Statement of Material Facts contains sixty-nine numbered paragraphs and accompanying record citations. Although Plaintiff's responsive statement coincidentally also contains sixty-nine paragraphs, the organization of Plaintiff's responsive facts bears little relation to the organization of Defendants' facts. Instead of admitting, denying or qualifying each of Defendants' facts, as Local Rule 56(c) requires, Plaintiff's pleading offers a two-column table. One column of the table lists paragraphs numbered one through sixty-nine, many of which contain a mélange of supported and unsupported

facts, legal conclusions, speculations and hearsay. The other column is titled "Plaintiff's [sic] Numbered Paragraphs Directly Controverted."[2] It contains lists of numbers, presumably corresponding to the paragraphs in Defendants' factual statement that each of Plaintiff's paragraphs is intended to "controvert."

Plaintiff's counsel apparently finds this table to be a convenient alternative format for summary judgment pleadings. It should come as no surprise to Plaintiff's counsel, however, that the format that the *Court* finds convenient is the one spelled out in Local Rule 56. Plaintiff's pleading violates this Rule in myriad ways. For example, many of Plaintiff's numbered facts are far from "short and concise" and contain several distinct facts organized into a brief, argumentative narrative.[3] *See* Local Rule 56(c). Some of the statements are not facts at all.[4] Futhermore, many of Plaintiff's statements do not actually controvert the Defendants' facts that they purport to address.[5] Most importantly,

---

1. Defendants also moved, in the alternative, to strike certain portions of the Plaintiff's response. Because the Court admits the Defendants' facts as true, it has no occasion to consider the alternative sanction and denies the second half of Defendants' Motion as moot.

2. The Court assumes that Plaintiff intended to "controvert" Defendants' facts rather than his own.

3. For example, one of Plaintiff's numbered paragraphs reads,

 At the time of the termination Mr. Cote and the members of the Town Council either believed that the Town was authorized to terminate Mr. Learnard immediately or did not care whether or not principles of due process required notice, a hearing, and that Mr. Learnard be terminated for "just cause." When the Plaintiff tried to inform the council of his due process rights at the February meeting, Chairman of the Council, Glen Vaillencourt told the Plaintiff that if he didn't like what the Town was doing,

 Plaintiff should hire a lawyer and sue them. [Record citation.] Vaillencourt now states that he knew the Town could not terminate Learnard without notice and a hearing. [Record citation.]
 (*See* Pl.'s Statement of Disputed Material Facts at ¶ 3 (Docket # 35).)

4. One "fact," for example, begins, "Richard Daigle has always been out to get Learnard." (*See* Pl.'s Statement of Disputed Material Facts at ¶ 13 (Docket # 35).)

5. For example, Plaintiff claims that the narrative offered in his Paragraph Three, quoted in note 3, *supra*, directly controverts Paragraph Three of Defendants' facts, which reads, "Under the Town Charter, the Town Manager may recommend that employees be removed from employment after notice and hearing before the Town Council." (*Compare* Pl.'s Statement of Disputed Material Facts at ¶ 3 (Docket # 35) *with* Defs.' Statement of Undisputed Material Facts at ¶ 3 (Docket # 29).) Plaintiff's response is at best loosely related to Defendants' statement.

the words "admit," "deny" and "qualify" simply do not appear in Plaintiff's pleading. The Court is not required to pore through the record and try to glean which of the Plaintiff's statements admits, denies, or qualifies which of the Defendants'. *See* Local Rule 56(e) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."); *see also Cantin v. Maine Sch. Admin. Dist. Number 6*, No. 99–271–P–H, 2000 WL 760987, at *1 n. 2 (D.Me. Apr. 24, 2000) (criticizing responsive statement that did not admit, deny or qualify moving party's facts). The Local Rule requires the litigants to perform that task.

Plaintiff defends his pleading not on the basis that it follows the Rule but rather on the basis that Plaintiff's counsel has used the same format in other courts and has received no complaints. Plaintiff's attorney is an experienced litigator and his decision to flout this District's Local Rules is inexcusable. Even if other courts have opted to forgive his violation of the Rules, the Court declines to do so here.

Moreover, Plaintiff's counsel's casual approach to the rules and orders of the Court is already an unfortunate pattern in this litigation. Earlier in this litigation, Plaintiff moved for default judgment claiming that Defendants had missed a filing deadline. The Court denied the motion in part because it was, in fact, Plaintiff who had miscalculated the time periods allowed under the Local Rule. (*See* Order Den. Defs.' Mot. to Strike and Pl.'s Demand for Default J. at 5 (Docket # 25).) Elsewhere in the same Order, the Court chastised Plaintiff's counsel for filing an amended complaint after the date for filing amendments without asking the Court's prior permission to do so. (*See id.* at 3.) Plaintiff now argues that the Court should tolerate this latest failure to adhere to pleading rules because failure to do so "would be a miscarriage of justice." (*See* Pl.'s Opp. to Defs' Mot. at 1 (Docket # 40).) Unfortunately for Plaintiff, the Court's charitable attitude toward procedural violations was exhausted in the last round of pleadings. For the foregoing reasons, Plaintiff's responsive factual statements will be disregarded.

 That Defendants' facts are the only ones before the Court does not, however, automatically entitle Defendants to summary judgment. *See Bailey v. McCarthy*, Civ. No. 01–82–P–C, 2002 WL 91886 (D.Me. Jan. 25, 2002) (citing *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir.1991)). "Rather ... the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Id.*

### B. Background

In accordance with Local Rule 56(e), for the purposes of Defendants' Motion, the facts in Defendants' statement are admitted to the extent they are supported by the record. Those facts reveal the following events:

Between 1996 and 2000, Plaintiff, Robert Learnard, worked full time as the public works director for the Town of Van Buren, Maine ("the Town"). On February 28, 2000, Learnard had a conversation with the Van Buren Town Manager, Defendant Larry Cote, the contents of which are disputed.[6] Cote claims that he advised Learnard that he intended to recommend to the Van Buren Town Council ("the Council") that it terminate Learnard's employment. Learnard argues that the Town Council,

---

**6.** Defendants' record citation does not support their version of this conversation and thus the Court may not treat Defendants' version as true. *See* Local Rule 56(e).

acting through Cote, actually terminated his employment during the February 28 conversation.

In any event, Learnard thereafter filed a grievance to challenge his termination. Attorneys for the Town and Learnard were unable to agree upon a date for the grievance hearing. The Council ultimately scheduled a hearing for March 29, 2000. Although neither Learnard nor his attorney attended the hearing on that date, the Council nevertheless met and, at the end of the session, voted to terminate Learnard's employment.

On April 25, 2000, Learnard filed a complaint in the Maine Superior Court for Aroostook County, pursuant to Maine Rule of Civil Procedure 80B, claiming that the termination procedure violated his due process rights. *See* Me. R. Civ. P. 80B. On August 31, 2001, the state court issued an order finding that "[u]nder the facts of this case, Mr. Learnard [sic] due process rights have been violated." (*See* Order Scheduling Course of Proceedings at 1 (Docket # 29, Ex. D).) It remanded the issue to the Town for a "supplemental hearing permitting plaintiff the opportunity to present evidence and confront witnesses." (*See id.*)

In response to the state court's ruling, the Town reinstated Learnard as a municipal employee on paid administrative leave and gave him back pay for the period between February 28 and June 14, 2000.[7] On October 30, 2000, the Council held the supplemental hearing that the state court had mandated. Learnard appeared with counsel, examined Cote and thirteen other witnesses, and introduced documents and photographs. At the end of that hearing, the Council once again voted, three to one,

to uphold Cote's recommendation to terminate Learnard's employment.

On February 20, 2001, Learnard filed his Complaint in this Court against the Town, Town Manager Cote and individual members of the Council. His First Amended Complaint alleges that all Defendants violated his procedural due process rights, actionable pursuant to 42 U.S.C. § 1983 (Count I). Learnard further alleges that the Defendants violated his rights under the Maine Civil Rights Act, 5 M.R.S.A. § 4681 et seq. (Count II) and committed several torts against him, including civil conspiracy (Count III), defamation (Count IV), intentional infliction of emotional distress (Count V), and invasion of privacy (Count VI). Finally, he claims that the Town and Council wrongfully discharged him (Count VII). On October 18, 2001, Defendants moved for summary judgment on all Counts, and Plaintiff moved for summary judgment against the Town on Count I only.

## C. Section 1983

█ Plaintiff claims that Defendants violated his procedural due process rights under the Fourteenth Amendment when they terminated his employment without first giving him notice of the reasons for his termination and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "To sustain an action under 42 U.S.C. § 1983, [a plaintiff] must show both: '(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United

7. Learnard was elected to the Council himself on June 14, 2000. The Town's position was that under the Town Charter, he could not both serve on the Council and remain a municipal employee. Thus, it discontinued his

employee pay on the date that he became a member of the Council. These facts are not before the Court on this Motion and are provided only for the purpose of explaining what otherwise appears an arbitrary date.

States.'" *Collins v. Nuzzo,* 244 F.3d 246, 250 (1st Cir.2001) (quoting *Chongris v. Board of Appeals,* 811 F.2d 36, 40 (1st Cir.1987)). There is no dispute that Defendants acted under color of state law when they terminated Plaintiff's employment. Therefore, Plaintiff has satisfied the first prong of his section 1983 claim.

To prove a violation of his procedural due process rights and thus satisfy the second prong, Plaintiff must demonstrate that (1) he had a constitutionally protected interest in his employment with the Town, and (2) Defendants deprived him of that interest without providing the constitutionally required procedural protections. *Brown v. Hot, Sexy & Safer Prods., Inc.,* 68 F.3d 525, 534 (1st Cir. 1995). As to the first element, one way to demonstrate a protected property interest in his continued employment is to show that "the applicable statute or employment contract requires that employment may be terminated only on a showing of 'cause.'" *Krennerich v. Inhabitants of Bristol,* 943 F.Supp. 1345, 1352–53 (D.Me.1996).

The Van Buren Town Charter specifies that ordinarily, Town employees will be removed only "for cause." (*See* Town Charter at s. 404(6) (Docket # 29 Ex. A).) This provision is consistent with Maine state law governing municipal employees. 30–A M.R.S.A. § 2601 ("Except where specifically provided by law, charter or ordinance, the municipal officers ... may remove those officials [that they have appointed] *for cause,* after notice and hearing.") (emphasis added). Defendants do not suggest that the terms of Plaintiff's employment differed significantly from those of other Town employees or those provided by statute. Therefore, a reasonable jury could conclude on these facts that Plaintiff had a property interest in his job, and Plaintiff has raised a genuine issue as to the first element of his procedural due process claim. The Court will proceed to the second element and consider whether Defendants provided him the process he was due before depriving him of that interest.

As a preliminary matter, the Court notes that the parties characterize the events described in Defendants' Statement of Material Facts differently. Defendants argue that during his February 28, 2000, conversation with Plaintiff, Defendant Cote merely advised Plaintiff that he intended to recommend that the Council terminate Plaintiff's employment and that the termination was not effective until the Council voted to uphold Defendant Cote's recommendation at the end of the March 29, 2000, hearing. In contrast, Plaintiff argues that during their February 28 conversation, Defendant Cote did not merely "advise" him that his termination might be imminent, but rather terminated his employment at that time. Defendants' facts, which the Court has admitted as true, support either understanding, and the Court will thus consider whether Plaintiff was denied the process he was due under either characterization.

In either case, Defendants claim that the analysis of the process that was due is governed by the so-called *"Parratt–Hudson* doctrine," which provides that the deprivation of a protected interest by the "random and unauthorized" acts of a state official does not constitute a procedural due process violation so long as the state provides adequate postdeprivation remedies. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part not relevant here by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). They argue that to the extent that the initial termination proceedings were constitutionally inadequate, any failure to provide Plaintiff with proper procedures was "random and unauthorized." Because Plaintiff

had recourse to the Rule 80B proceeding in state court and received a subsequent rehearing in front of the Council, according to Defendants, he suffered no procedural due process violation.

The *Parratt–Hudson* doctrine derives from the Supreme Court's opinions in *Parratt v. Taylor*, 451 U.S. at 527, 101 S.Ct. 1908, and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), both of which involved factual contexts significantly different from the one presented here. In *Parratt*, prison officials negligently failed to follow standard procedures for processing mail and, as a result, lost some of the incarcerated plaintiff's property. The Court recognized that although the general rule is that the state should employ proper procedures *before* depriving an individual of a protected interest, there are situations in which it is impractical to expect the state to provide predeprivation procedure. *Parratt*, 451 U.S. at 540, 101 S.Ct. 1908. One such situation is where the deprivation was unpredictable. *Id.* at 541, 101 S.Ct. 1908. The Court held that the deprivation effected by the prison officials' negligence was unpredictable in that it was a "random and unauthorized" deviation from proper procedure. *Id.* at 543, 101 S.Ct. 1908. It further held that because the state provided the inmate with postdeprivation tort remedies to recover the value of the lost property, no procedural due process violation had occurred. *Id.*

In *Hudson*, also a "prison" case, an inmate alleged that a prison official had purposely, rather than negligently, destroyed his property. *Hudson*, 468 U.S. at 520, 104 S.Ct. 3194. The Court extended the *Parratt* rule to intentional deprivations of property. So long as adequate postdeprivation remedies were available, the destruction of the inmate's property interest did not violate the inmate's procedural due process rights. *Id.* at 533, 101 S.Ct. 1908.

■ Thus, the basic *Parratt–Hudson* doctrine is fairly simple and requires that the Court answer only two questions: First, was the conduct that caused the deprivation "random and unauthorized"? Second, were adequate state remedies available to correct the deprivation? If the answer to both of these questions is "yes," then no procedural due process violation has occurred, and the claim fails as a matter of law.

Despite the doctrine's basic simplicity, however, the challenge lies in identifying whether a deprivation is "random and unauthorized." *See Lowe v. Scott*, 959 F.2d 323, 341 (1st Cir.1992) (emphasizing the importance of the random and unauthorized determination). Whereas it is relatively easy to see how the actions of renegade prison guards might be identified as random and unauthorized, behavior outside that factual context is often much more difficult to characterize. In order to assess the Defendants' contention that their conduct in terminating Plaintiff's employment without the constitutionally required notice and a hearing was random and authorized, it is necessary to examine the caselaw interpreting the standard in some detail.

As a general matter, the Supreme Court has suggested three factors tending to indicate that conduct was *not* random and unauthorized: (1) the specific deprivation that occurred was foreseeable, (2) state officials ordinarily would have sufficient warning of the impending deprivation to conduct a predeprivation proceeding, and (3) the state "delegated to [the state officials] the power and authority to effect the very deprivation complained of." *Zinermon v. Burch*, 494 U.S. 113, 136–38, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). These factors apply in a straightforward fashion to the events of Plaintiff's termination as the Plaintiff characterizes them.

■ Although Plaintiff claims that Town Manager Cote terminated his employment during the February 28 conversation, the record indicates that Defendant Cote had no authority to fire someone in Plaintiff's position. Among the enumerated "Powers and Duties of the Town Manager" in the Van Buren Town Charter, is the power to "*recommend* for removal for cause after notice and hearing all other employees [other than heads of departments], subordinates and assistants, and to bring all appointments, removals and suspensions to the Council for action." (*See* Town Charter at s. 404(6) (Docket # 29 Ex. A)) (emphasis added). Applying the *Zinermon* factors, the Court concludes that any action by Defendant Cote in discharging Plaintiff without the Council's approval would have been unpredictable. Furthermore, it would not have been possible for the Council to have provided the Plaintiff with advance process. Finally, the Town Charter specifically had not delegated to Defendant Cote the authority to terminate Plaintiff's employment. Therefore, if Defendant Cote terminated Plaintiff's employment on February 28, his conduct would amount to nothing more than "random and unauthorized" state action under the meaning of the *Parratt–Hudson* doctrine. *See Lowe,* 959 F.2d at 343–44 (finding that chair of medical licensing board's conduct was unauthorized under *Parratt–Hudson* when he misstated the board's position by telling hospital administrator that plaintiff doctor had lost certain hospital privileges). Thus, as to the Plaintiff's characterization of his termination, the Court answers the first *Parratt–Hudson* question in the affirmative.

■ Having determined that Defendant Cote's action was random and unauthorized if Plaintiff is correct that his employment was terminated on February 28, the Court now assumes for purposes of analysis that Defendants are instead correct, and the termination of Plaintiff's employment was not effective until after the March 29 Council meeting. Assuming that it was Defendants' actions on March 29 that in fact deprived Plaintiff of his interest in his employment, the Court must consider whether Defendants' conduct on that date was random and unauthorized.

This scenario fares much differently under the *Zinermon* factors. Ordinarily, when an official municipal body discharges a town employee, it plans to do so in advance; the deprivation, in that respect, is not unpredictable. Moreover, because the municipal officers anticipate terminating the employee, it is usually possible to provide him with notice and a hearing, barring an emergency. Finally, the town officials are the very persons to whom the state has delegated the power to appoint and remove town employees and to provide the proper procedures in doing so. If the Court were left to the guidance of *Zinermon* alone, therefore, it might conclude that by terminating Plaintiff's employment after a "hearing" at which he was not present, the Defendants would appear *not* to have engaged in random and unauthorized conduct.

However, the First Circuit has addressed factual situations that are very similar to the one the Plaintiff presents and has concluded just the opposite. *See O'Neill v. Baker,* 210 F.3d 41 (1st Cir. 2000); *Cronin v. Town of Amesbury,* 81 F.3d 257 (1st Cir.1996). In *O'Neill,* the court specifically found that if a state statute required certain procedural protections, and a state agency failed to provide them, that failure would be "random and unauthorized" within the meaning of *Parratt. O'Neill,* 210 F.3d at 50. In another case addressing the termination of a public employee, the Circuit applied the *Parratt–Hudson* doctrine and concluded that

even assuming ... that the Town defendants failed to give [the employee] the

procedure he was due in making the decision to terminate him ..., [the employee] cannot succeed on his procedural due process claim unless he can show that the state failed to provide him with an adequate postdeprivation remedy.

*Cronin,* 81 F.3d at 260 (citing *Lowe,* 959 F.2d at 340–41).

Cases arising from other factual contexts suggest that the existence of an official policy is determinative of whether the depriving conduct was random and unauthorized. In *Parratt* itself, the Supreme Court specifically noted that the prison officials lost the plaintiff's property by failing to follow established state procedures. *Parratt,* 451 U.S. at 543, 101 S.Ct. 1908. On the other hand, the Court has deemed *Parratt–Hudson* inapplicable where official state procedures themselves either caused or permitted the failure to provide procedural protections. *See Zinermon,* 494 U.S. at 138–39, 110 S.Ct. 975 (holding that a deprivation was not "random and unauthorized" where a state statute delegated authority to defendants that they abused by failing to provide adequate procedure); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (holding that *Parratt* did not apply where the state statutory scheme itself caused the plaintiff to be deprived of his property interest); *Loudermill,* 470 U.S. at 536, 105 S.Ct. 1487 (noting the plaintiffs challenged employment statute on its face). Likewise, the First Circuit considering other factual circumstances has held deprivations effected in violation of official policy to be random and unauthorized. *See Lowe,* 959 F.2d at 344 (applying *Parratt–Hudson* doctrine where official acted in violation of procedures specified in consent order); *Brown,* 68 F.3d at 536–37 (applying *Parratt–Hudson* doctrine where school failed to obtain parental permission for students' viewing of sexually explicit presentation, in violation of school's own sex education policy);

*Herwins v. City of Revere,* 163 F.3d 15, 19 (1st Cir.1998) (noting that if housing inspector had properly followed city procedure, violation never would have occurred).

The Court thus concludes that it must focus on whether official policy that existed at the time of the deprivation would adequately have protected the Plaintiff's interest if followed. If so, then the failure to follow that policy was random and unauthorized. At the time of Plaintiff's termination, both Maine law and the Van Buren Town Charter required that Town employees only be removed "for cause" and "after notice and a hearing." 30–A M.R.S.A. § 2601. (*See* Town Charter at s. 404(6) (Docket # 29 Ex. A).) The Court finds that the language "notice and a hearing" is intended to invoke the procedures required by *Loudermill. See Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487 ("The essential requirements of due process ... are notice and an opportunity to respond.") Official policy, therefore, was to provide Town employees with constitutionally adequate procedures before terminating their employment. To the extent that the March 29 hearing did not provide Plaintiff an adequate opportunity to respond in that he was unable to attend, Defendants' conduct in holding the hearing was "random and unauthorized." Thus, whether Plaintiff was terminated on February 28, as he contends, or on March 29, as Defendants argue, any procedural inadequacies were the result of random and unauthorized conduct.

 Finally, then, the Court must address the second *Parratt–Hudson* question: were the state procedures that were available to Plaintiff adequate to remedy the flaws in the pretermination procedure? It is not necessary to linger long on this point. Plaintiff successfully utilized the procedures for reviewing administrative

action under Maine Rule 80B and obtained a new hearing in front of the Council. Furthermore, after the state court ordered a new hearing, the Town reinstated Plaintiff on administrative leave with pay. Finally, there is no evidence that the October hearing was deficient. To the contrary, Plaintiff called fourteen witnesses, cross-examined witnesses and introduced exhibits. Plaintiff's argument that the state remedy was inadequate because he did not pursue damages against the Defendants in state court is wholly unsupported by the caselaw. *See, e.g., Parratt,* 451 U.S. at 544, 101 S.Ct. 1908 ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process.") Therefore, Plaintiff received the procedure he was due in the form of adequate postdeprivation remedies and cannot state a claim for a procedural due process violation. All Defendants are entitled to summary judgment on this Count. Plaintiff's Motion for Partial Summary Judgment on the same Count is therefore denied.

## D. State law claims

■ In addition to his Section 1983 claim, Plaintiff raises several claims under state law. Ordinarily, when a court grants summary judgment in a defendant's favor on all federal claims, it should simply dismiss any pendent state claims to allow the plaintiff to refile them in state court. *Rivera v. Murphy,* 979 F.2d 259, 264–65 (1st Cir.1992) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Cer-

tainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). In this case, however, Defendants have specifically requested that the Court decide the state claims on the merits rather than dismissing them. In light of Defendants' request, the Court will examine its basis for jurisdiction over the state law claims.[8] *See Cusumano v. Microsoft Corp.,* 162 F.3d 708, 712 (1st Cir.1998) ("Federal courts . . . must appraise their own authority to hear and determine particular cases.")

■ Supplemental jurisdiction is limited to "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). The Court only has the authority to address those claims that relate to the same "nucleus of operative fact" as the federal due process claim. *Gibbs,* 383 U.S. at 725, 86 S.Ct. 1130.

■ Plaintiff's federal due process claim is based on the facts surrounding his official termination from employment, including the events of the Council hearings and the state court proceedings, as well as related correspondence and conversations. However, Plaintiff's state law claims arise at least partially out of conduct that is, at best, tangentially related to the federal due process claim. This conduct includes an allegation that Defendants initiated and pursued an official investigation into whether Plaintiff stole Town property. As part of this investigation, according to Plaintiff, Defendant Cote trespassed on his property and broke into a trailer he owned. Plaintiff also alleges statements

---

**8.** Identifying the proper scope of the Court's jurisdiction takes on heightened importance here. Overreaching would be particularly unjust in this case because Plaintiff's violation of the Local Rules means that the Court would rule without considering Plaintiff's version of events.

that Defendants made in other Council meetings at which Plaintiff's termination was not discussed, as well as at other locations around the Town.

Claims based on facts involving the investigation, break-in and defamatory statements unrelated to the official termination are part of a different nucleus of operative fact from that giving rise to the federal claim. *See Serrano–Moran v. Grau–Gaztambide,* 195 F.3d 68, 70 (1st Cir.1999) (finding no abuse of discretion where the district court refused to hear state law claims involving different sets of facts and witnesses than federal claim). Specifically, Plaintiff's claims that Defendants violated the Maine Civil Rights Act, 5 M.R.S.A. § 4682, and committed the torts of civil conspiracy, defamation, intentional infliction of emotional distress, and invasion of privacy all rely at least partially on facts other than the official termination proceedings. Deciding only a portion of the claims and dismissing those portions over which the Court lacks jurisdiction would likely only invite confusion and ultimately would be of little use in conserving judicial resources. Therefore, the Court declines Defendants' request and dismisses these Counts in their entirety without prejudice to their being filed in state court.

■■■ The last remaining Count is a wrongful discharge claim against the Town and Council. Plaintiff alleges that Defendants wrongfully discharged him from his employment by terminating him without just cause. Unlike the other state claims, this claim arises out of the same core facts as the federal due process claim, and thus the Court has supplemental jurisdiction over it. However, this claim raises concerns about whether exercising this jurisdiction is proper.

In deciding whether to exercise supplemental jurisdiction the Court must "consider and weigh ... the values of judicial economy, convenience, fairness and comity ...." *Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. 614. The statute codifying the pendent jurisdiction doctrine suggests situations in which declining jurisdiction might be appropriate, including when "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).

The status of wrongful discharge claims under Maine law is somewhat uncertain. Defendants correctly argue that as a general matter, the Maine Law Court has yet to recognize the common law claim of wrongful discharge. *Bard v. Bath Iron Works Corp.,* 590 A.2d 152, 156 (Me.1991). However, Maine courts generally have declined to entertain wrongful discharge claims when they are brought by *at-will* employees. *See id.* at 155; *Libby v. Calais Regional Hosp.,* 554 A.2d 1181 (Me. 1989). *See also Green v. Me. Sch. Admin. Dist. 77,* 52 F.Supp.2d 98, 111 (D.Me.1999). The Law Court has indicated some willingness to consider a wrongful discharge claim by a plaintiff whose employment was only terminable for cause. *Staples v. Bangor Hydro–Elec. Co.,* 561 A.2d 499, 501 (Me.1989) ("Plaintiff's wrongful discharge counts hinge on the question whether his employment was terminable at will."); *see also Green,* 52 F.Supp.2d at 110–11 (citing *Staples,* 561 A.2d at 501).

There is evidence in this case from which a reasonable jury could conclude that Plaintiff's employment was terminable only for cause and that he was not, therefore, an at-will employee. *See Krennerich,* 943 F.Supp. at 1351. However, the parties have not directed the Court's attention to, nor has the Court's own research turned up, any Maine case in which a terminable-for-cause employee successfully brought a claim for wrongful discharge. Nor is the Court aware of a case that differentiates this genre of wrongful discharge claim from, for example, a claim for breach of employment contract. The contours of

this claim, if it exists in Maine, thus are better outlined in state court, and the Court also dismisses this count without prejudice. *Cf. Alves v. American Med. Response, Inc.*, 76 F.Supp.2d 119 (D.Mass. 1999) (remanding a removed case to state court after federal claims were dismissed because remaining state claims involved contentious issues of state law).

## III. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART Defendants' Motion to Deem Defendants' Statement of Facts Admitted. It deems Defendants' factual statements admitted and DENIES the remainder of the Motion AS MOOT.

The Court DENIES Plaintiff's Motion for Partial Summary Judgment and GRANTS IN PART Defendants' Motion for Summary Judgment. Specifically, the Court GRANTS summary judgment for all Defendants on Count I and DISMISSES Counts II–VII WITHOUT PREJUDICE.

SO ORDERED.